WARE V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-500-CR

PATRICK TYSONNE WARE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

OPINION

------------

Appellant Patrick Tysonne Ware appeals his conviction of capital murder.  We affirm.  

Factual and Procedural Background

At approximately 6:00 a.m. on June 10, 2000, Eddie Lee Barry was shot and killed in his home by a group of assailants.  According to the State, Appellant went with Devin Pope, Derick Smith, and Anthony King to Barry’s house with the intent to rob him.  The State alleged at trial that Pope drove to the Barry home where Appellant and King jumped over a fence, burst into the home, and shot and killed Barry.  Appellant was convicted in December 2002 of capital murder.  The trial judge sentenced Appellant to life imprisonment and imposed a fine for court costs in the amount of $9,161.85.

On January 10, 2003, Appellant filed his second motion for new trial, claiming that material evidence favorable to his case was discovered after the trial.  This evidence was a written statement from Smith asserting that Appellant was not a participant in Barry’s murder.  The record reflects that Smith entered a plea of guilty to a lesser charge for his participation in the murder.

When Appellant’s counsel sought Smith’s testimony at the hearing on the motion for new trial, Smith invoked his Fifth Amendment privilege under the advice of his attorney.  Appellant argued that Smith could be compelled to testify because he pled guilty to the offense and waived his rights to appeal.  After reviewing briefs on the issue from Appellant, Smith, and the State, the trial court ruled that Smith could not be compelled to testify after asserting his Fifth Amendment right.  Smith’s statement was not admitted into evidence, and Appellant’s second motion for new trial was denied.  Appellant raises two issues on appeal.

Factual Sufficiency

Appellant contends in his first issue that the evidence is factually insufficient to support his conviction.  In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations.  
Id.
 at 8-9; 
Clewis
, 922 S.W.2d at 136.  We may not substitute our judgment for that of the fact finder’s.  
Johnson
, 23 S.W.3d at 12.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Id
. at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.  
Johnson
, 23 S.W.3d at 12.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  We therefore now turn to a review, in addition to the evidence recited above, of the most important and relevant evidence supporting Appellant’s complaint of factual insufficiency of the evidence supporting his capital murder conviction.   Appellant contends that the evidence is factually insufficient because the central witness in this case, Pope, was also implicated in the murder and has every reason to lie.  Appellant points out that Pope received a reduced sentence in exchange for his testimony at Appellant’s trial and that Pope has a closer friendship with the two other men involved in the murder, Smith and King, than he does with Appellant.

The State’s first witness at Appellant’s trial was Pope.  According to Pope, he went with Smith and King to JP’s Lounge, a club in Wichita Falls, to buy some marijuana at approximately 3:30 a.m. on June 10, 2000.  The group of men ran into Appellant at JP’s Lounge and decided they would go find some marijuana.  The men drove around for a while and decided to rob Barry.  Pope stated that Smith was armed with a gun and that he also saw Appellant with a gun.  Pope drove the men to Barry’s house where Appellant, wearing a red pullover with a hood, and King got out of the car and jumped Barry’s fence. Appellant then kicked in Barry’s door and entered the house.  Pope stated that he heard gunshots just before Appellant and King ran from the house to the car.  Pope testified that Appellant had a cut on his hand and that Appellant said he dropped his watch when he jumped over Barry’s fence.

Pope drove to the home of his girlfriend, Ramona Houston, and stashed the guns in her closet.  After dropping Appellant off at a friend’s house, Pope called LaToya Smith (“LaToya”) and asked her to come pick him up.  LaToya took Pope back to Houston’s house to get the guns and then drove him out to the country, where he disposed of the guns.  Houston called Pope the next day and told him that the police had spoken to her.  Pope testified that he got scared and left for Oklahoma City with LaToya.

Pope was eventually arrested and led the police to the location where the guns were hidden.  He was sentenced to fifteen years’ imprisonment for aggravated robbery in exchange for his testimony and cooperation with the authorities.  On cross examination, Pope admitted that he was only a casual acquaintance of Appellant’s, while King and Smith are his friends.  He also testified that he was not completely truthful with the police in his early statement about the crime and that he was originally charged with murder.

The record reflects sufficient independent corroboration of Pope’s testimony to establish that the evidence in this case is factually sufficient to support Appellant’s conviction.  The test for determining the sufficiency of the corroboration is to eliminate the accomplice testimony from consideration and then determine if there is any other incriminating evidence which "tends to connect" the defendant with the crime.  
Hernandez v. State
, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); 
Reed v. State
, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988).

Officer Buddy Wayne Alexander, a police officer for the City of Wichita Falls, testified that a watch was recovered at the crime scene.  At trial, Appellant admitted that the watch found at the crime scene belongs to him.  Deseree and LaTonya Mollice testified that Appellant admitted to the murder during a conversation with them on a speaker phone.  Furthermore, Pope’s testimony was corroborated by several witnesses that were sleeping at Barry’s home on the night of the murder.  

On the night of the killing, several minors spent the night at Barry’s house, most of whom slept on the living room floor and awoke when the shooting ensued.  Steven DeWayne Hardeman, the best friend of Barry’s son, testified that he was sleeping on the living room floor when a man wearing a red pullover sweater with a hood and carrying a gun came in the front door.  Hardeman saw the man holding a gun and wrestling with Barry just before he heard gunshots and put his head under the covers in fear.  Dashon Lorenzo Fleeks, Barry’s nephew, was also at Barry’s house when the killing occurred.  Fleeks testified that one of the men wore a red sweater.  Kortlan Raddan McGee testified that as he was sleeping on Barry’s living room floor, he was awakened by gunshots and saw a man wearing a “red top.”  Tony DeWayne Pendleton testified that one of the two people who came into the house “had on all red . . . like a sweat suit thing.”

Houston, Pope’s girlfriend at the time of the incident, also testified at trial.  According to Houston, Pope came to her house three times during the early morning hours of June 10th and appeared nervous each time.  The following day, she found a red sweatshirt and a blue Georgetown jersey in her trash can.  Suspecting the clothes had something to do with Barry’s murder, Houston called the police department.  DNA evidence revealed the presence, with mathematical certainty, of blood belonging to both the victim and Appellant on the red sweatshirt.  Therefore, regardless of whether Pope had reason to lie, our review of the record reveals sufficient evidence apart from Pope’s testimony that tends to connect Appellant with the murder. 

Having carefully examined the evidence in a neutral light, including the evidence relevant to and supportive of Appellant’s sufficiency of the evidence arguments on appeal, we hold that the proof of Appellant's guilt is not so weak as to undermine confidence in the jury's verdict.  Further, we hold that the evidence of Appellant's guilt is not outweighed by contrary proof and that his  conviction for capital murder is supported by factually sufficient evidence.  We overrule Appellant’s first issue.  

Motion for New Trial

Appellant argues in his second issue that the trial court erred in failing to grant his second motion for new trial because Smith’s written statement asserting Appellant’s innocence constitutes material evidence discovered after the trial.  The trial court has discretion to decide whether to grant a new trial based upon newly discovered evidence, and its ruling will not be reversed absent an abuse of discretion.  
Keeter v. State
, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002).  Likewise, the trial judge determines the credibility of the witnesses and whether the new evidence is probably true.  
Id
.  Motions for new trial based on newly discovered evidence traditionally lack favor with the courts and are viewed with great caution.  
Drew v. State
, 743 S.W.2d 207, 225-26 (Tex. Crim. App. 1987), 
cert. denied
, 512 U.S. 1266 (1994).  We do not substitute our judgment for that of the trial court.  
Salazar v. State
, 38 S.W.3d 141, 148 (Tex. Crim. App.), 
cert. denied
, 534 U.S. 855 (2001).  Rather, we decide whether the trial court's decision was arbitrary or unreasonable.  
Id
.  A trial court’s denial of a motion for new trial is arbitrary or unreasonable if the record reflects that:  (1) the newly discovered evidence was unknown to the movant at the time of trial; (2) the movant's failure to discover the evidence was not due to his want of diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is probably true and would probably bring about a different result in another trial.  
Keeter
, 74 S.W.3d at 36-37; 
Moore v. State
, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1114 (1995).

The Texas Court of Criminal Appeals has recognized the right of the accused to have compulsory process for obtaining witnesses as guaranteed by the Sixth Amendment and incorporated in the due process clause of the Fourteenth Amendment.  
See Coleman v. State
, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998) (recognizing the defendant's right to compulsory process in order to obtain the attendance and testimony of witnesses favorable to his defense) (op. on reh’g); 
Norman v. State
, 588 S.W.2d 340, 343 (Tex. Crim. App. [Panel Op.] 1979) (concluding that the trial court committed constitutional error in failing to grant the defendant's request for immunity for a State informant in order to compel the informant's testimony in support of his defense), 
cert. denied
, 446 U.S. 909 (1980).  However, in a criminal prosecution, the accused’s right to compulsory process under the Sixth Amendment does not override a witness’ Fifth Amendment privilege against self-incrimination.  
Bridge v. State
, 726 S.W.2d 558, 567 (Tex. Crim. App. 1986); 
Suarez v. State
, 31 S.W.3d 323, 329 (Tex. App.—San Antonio 2000, no pet.). 

The San Antonio Court of Appeals recognized this principle when it addressed an issue very similar to the case at hand in 
Suarez v. State
.  31 S.W.3d at 329.  In that case, George Suarez and Trinidad Riojas were charged with burglary of a habitation.  Suarez wanted to call Riojas as a witness to establish that Riojas acted alone in committing the burglary.  
Id.
 at 328.  Suarez contended that Riojas did not have the right to invoke his Fifth Amendment privilege because there were no pending charges against him and he had already pled guilty to the underlying offense.
  Id.
 at 329.  The San Antonio Court of Appeals held that because Riojas invoked the privilege on the advice of his attorney, the trial court was not required to make any further determination regarding whether Riojas validly asserted the privilege.  
Id
.  The court additionally noted that even when a co-defendant has pled guilty and been sentenced in connection with the offense, he may still properly invoke his Fifth Amendment privilege against self-incrimination, because if his testimony contradicts any previous judicial admissions, he could be subject to the charge of perjury.  
Id.

Appellant attempts to distinguish the facts of his case, arguing that Smith  was not in jeopardy of being charged with perjury.  Appellant concedes that there is a conflict between Smith’s statements to the police and the statements he made in his affidavit, but contends that the inconsistencies do not constitute perjury because Smith’s statements to the police were not under oath. Appellant argues that because Smith was not in jeopardy of being charged with perjury, he could be compelled to testify just like any other witness.

We agree with the San Antonio Court of Appeals and other Texas courts that have held that once a trial court learns that a witness has been advised by his attorney to invoke his Fifth Amendment privilege, it is relieved of the obligation to inquire further as to whether the assertion of the privilege is valid.  
Ross v. State
, 486 S.W.2d 327, 328 (Tex. Crim. App. 1972); 
Suarez
, 31 S.W.3d at 329; 
Castillo v. State
, 901 S.W.2d 550, 552-53 (Tex. App.—El Paso 1995, pet. ref’d); 
Chennault v. State
, 667 S.W.2d 299, 302 (Tex. App.—Dallas 1984, pet. ref’d).

Thus, whether Smith would be subject to perjury charges or any other harm is not relevant.  Smith was advised by his attorney to invoke his Fifth Amendment privilege.  Therefore, we, like the trial court, do not address whether the privilege was validly asserted and conclude that the trial court did not abuse its discretion in denying Appellant’s second motion for new trial.  We overrule Appellant’s second issue. 

Conclusion

Having overruled both of Appellant’s issues, we affirm the trial court’s judgment.  

 DIXON W. HOLMAN

JUSTICE

PANEL F: LIVINGSTON, HOLMAN, and WALKER, JJ.

WALKER, J. concurs without opinion.

DO NOT PUBLISH  

Tex. R. App. P. 
47.2(b)

DELIVERED:  April 8, 2004